TAX MAP NO.: 

After Recording Return To:
RUTH RUHL, P C
[Company Name]
Attn Recording Department
[Name of Natural Person]
2801 Woodside Street
[Street Address]
Dallas, Texas 75204
[City, State, Zip]

Prepared By:
RUTH RUHL, P C and
Co-Counsel, M Richard Epps, P C

_____(Space Above This Line For Recording Data)_____

Loan No ·
MERS No                                                                    MERS Phone 1-888-679-6377

# LOAN ASSUMPTION AGREEMENT

THIS LOAN ASSUMPTION AGREEMENT ("Agreement"), made effective as of July 1st, 2010        ,
between  LOUISE GWINN SIVY                                                    ("Seller")
and LOUISE GWINN SIVY and MICHAEL B SIVY and LARISSA R SIVY
                                                                              ("Borrower/Grantor")
and Aurora Bank FSB

                                                                              ("Lender/Grantee")
and Mortgage Electronic Registration Systems, Inc                             ("Mortgagee"),
amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated
February 28th, 2006   , granted or assigned to Mortgage Electronic Registration Systems, Inc as mortgagee of
record (solely as nominee for Lender and Lender's successors and assigns), P O Box 2026, Flint, Michigan 48501-
2026 and recorded on March 2nd, 2006          , in Book/Liber N/A            , Page N/A              ,
Instrument No  20060302-19577       , Official Records of  Loudoun           County, Virginia         ,
and (2) the Note, made in the amount of U S $ 646,700 00      executed by LOUISE GWINN SIVY
                                                                                      ("Maker")
payable to the order of  CTX Mortgage Company, LLC                       in accordance with the terms
set forth therein, bearing the same date as, and secured by, the Security Instrument, which covers the real and
personal property described in said Security Instrument and defined therein as the "Property," located at
43884 RIVER PT DR, LEESBURG, Virginia 20176                                                           ,

Abbreviated Legal Description    LOT 12, SECTION 29, LANSDOWNE ON THE POTOMAC

VIRGINIA LOAN ASSUMPTION AGREEMENT                                            Page 1 of 8
ARM-No Release

Loan No ▇▇▇▇▇▇▇▇

the real property described being set forth as follows

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

Borrower is purchasing the above described property from Seller and desires to assume the payment of the Note and the covenants, conditions and obligations of the Security Instrument. Lender who is or who represents the legal holder and owner of the Note and of the lien(s) securing the same has agreed at the request of the Seller to allow the Borrower's assumption of the balance of the indebtedness evidenced by the Note as part of the consideration for the purchase of the property

For and in consideration of Ten and No/100 Dollars ($10 00) and other good and valuable consideration paid by each of the parties to the other, the receipt and sufficiency of which are hereby acknowledged and confessed, and in consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument)

    1.    **Acknowledgment and Assumption of Unpaid Principal Balance**: Seller and Borrower acknowledge that as of July 1st, 2010, the amount payable under the Note and secured by the Security Instrument (the "Unpaid Principal Balance") is U S $ 646,700 00. Borrower hereby expressly assumes the payment of the indebtedness evidenced by the above described Note and promises to pay jointly and severally to the order of the Lender the sum of U S $ 646,700 00 (the "Principal Balance"), consisting of the unpaid principal balance less any reductions of principal made by Seller, any accrued but unpaid interest, and any additional sums advanced by Lender. Borrower also agrees to perform and comply with all covenants, conditions and obligations of the Security Instrument, as amended herein

Interest will be charged on the Principal Balance until the full amount of principal has been paid. Borrower will pay interest at a yearly rate of 6 875 % as set forth below. The Borrower promises to make initial monthly payments of principal and interest of U S $ 3,705 05. The monthly payment amount may change as discussed in Paragraph 6. The Borrower promises to make monthly payments of principal and interest beginning on August 1st, 2010, and continuing thereafter on the 1st day of each succeeding month until principal and interest are paid in full. If on March 1st, 2036 ("Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date

The Borrower will make such payments at Aurora Bank FSB, 10350 Park Meadows Drive, Littleton, Colorado 80124 or at such other place as Lender may require

    2.    **No Release of Liability**: Seller is and shall remain liable for the payment of the Note, as modified herein, and the covenants, conditions and obligations of the Security Instrument and consents to any modification and renewal and extension described herein. Although Seller is and remains personally obligated to pay the sums secured by the Security Instrument, Seller agrees that Lender and Borrower may agree to extend, modify, forbear or make any other documents executed in connection herewith accommodations with regard to the terms of the Note, of the Security Instrument and any other documents executed in connection herewith

    3.    **Assumption of Original Terms**: The Borrower hereto agrees to accept the terms of the Note and Security Instrument as originally entered into between the original Borrower and Lender. The Borrower and Lender have agreed to further enter into a loan modification agreement modifying the terms of the original Note and Security Instrument evidenced by a loan modification agreement

Loan No

4. **Transfer of Escrow Funds to Borrower:** Seller assigns and transfers to Borrower all funds on deposit for payment of taxes, homeowner association dues, insurance premiums and any applicable refunds. Borrower understands that it is Borrower's responsibility to obtain hazard insurance on the Property and that Seller's policy will not inure to Borrower's benefit

5. **Waiver of Due-on-Transfer Clause:** In consideration of the assumption of the Note and Security Instrument by Borrower, and the modification of the Note (if any), as described above, the Lender agrees to waive and relinquish its right under the Security Instrument to declare all sums secured by the Security Instrument immediately due and payable by reason of the sale and transfer by Seller to Borrower, it being understood and agreed that this waiver and relinquishment applies only to said sale and not to any future sales or transfers. In addition, Seller hereby agrees that if the prepayment of the Note requires a refund of a portion of the interest previously collected in order to comply with the applicable laws of this state, Seller assigns and transfers to Borrower any and all right and interest in and to any such refund, and Lender is hereby authorized to pay or credit such refund to Borrower

6. **Payment Changes:** Changes in the monthly payment will reflect changes in the unpaid principal of the loan and in the interest rate Borrower must pay. The Lender will determine the new interest rate and the changed amount of the monthly payment in accordance with Paragraph 8 of this Agreement. The interest rate the Borrower will pay may change on March 1st, 2016, and on that day every (   ) months thereafter. Each date on which the interest rate could change is called a "Change Date"

7. **The Index:** Beginning with the first Change Date, the interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury Securities adjusted to a constant maturity of (   ) year(s) as made available by the Federal Reserve Board. The most recent Index figure available as of the date   days before each Change Date is called the "Current Index". If the Index is no longer available, the Lender will choose a new index which is based upon comparable information. The Lender will give the Borrower notice of this choice

8. **Calculation of Changes:** Before each Change Date, the Lender will calculate the new interest rate by adding   % to the Current Index. The Lender will round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated below, this rounded amount will be the new interest rate until the next Change Date. The Lender will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that Borrower is expected to owe at the Change Date in full on the maturity date at the new interest rate in substantially equal payments. The result of this calculation will be the new amount of the monthly payment. Borrower will pay the amount of the new monthly payment beginning on the first monthly payment date after the Change Date until the amount of the new monthly payment changes again. The monthly payments will be applied first to the payment of interest due and then to principal

9. **Interest Rate Limitations:** The interest rate Borrower is required to pay at the first Change Date will not be greater than   % or less than   %. Thereafter, the interest rate will never be increased or decreased on any single Change Date by more than   % from the rate of interest Borrower has been paying for the preceding months. The interest rate will never be greater than   %

10. **Notice of Changes:** Before the effective date of any change, the Lender will deliver or mail to Borrower a notice of any changes in the interest rate and the amount of the monthly payment. The notice will include information required by law to be given to Borrower and also the title and telephone number of a person who will answer any questions Borrower may have. Unless applicable law requires a different method, any notice that must be given to Borrower under this Agreement will be given by delivering it or mailing it by first class mail to Borrower at the Property Address stated above or at a different address if Borrower gives the Lender a notice of Borrower's different address. Any notice that must be given to Lender under this Agreement will be given by mailing it first class mail to the Lender at the address stated in Paragraph 1 above or at a different address if Borrower is given a notice of that different address

Loan No ████

11. **Late Charges for Overdue Payments:** If the Lender has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, Borrower will pay a late charge to the Lender. The amount of the charge will be 5 00 % of the overdue payment of principal and interest. Borrower will pay this late charge promptly but only once on each late payment. The late charge is not in lieu of any other remedy of Lender, including any default remedy, and will not be charged if such charge would constitute interest in excess of the maximum permitted by state law

12. **Borrower's Right to Prepay:** Borrower has the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When Borrower makes a prepayment, Borrower will tell the Lender in writing that Borrower is doing so

13. **Renewal and Extension of Maturity:** This Agreement is a "written extension" as provided by the applicable laws of this state. It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended until the indebtedness evidenced by the Note, as renewed, modified and extended hereby, has been fully paid. The parties acknowledge and agree that such extension, renewal, amendment, modification or rearrangement shall in no manner affect or impair the Note or the liens and security interests securing same, the purpose of this Agreement being simply to provide for the assumption of the indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note (including if applicable any and all vendor's liens securing the Note), which are expressly acknowledged by the Seller and the Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note. The Seller and the Borrower hereby expressly waive the benefit of any and all statutes of limitation which might otherwise inure to Seller's and the Borrower's benefit, or be in any way applicable to Seller's and Borrower's obligations under the terms of any and all instruments described herein

14. **Usury:** No provisions of this Agreement or the Note or any instrument evidencing or securing the Note, or otherwise relating to the indebtedness evidenced by the Note, shall require the payment or permit the demand, collection, application or receipt of interest in excess of the maximum permitted by applicable state or federal law. If any excess of interest in such respect is herein or in any such other instrument provided for, or shall be adjudicated to be so provided for herein or in any such instrument, the provisions of this paragraph shall govern, and neither Seller, Borrower nor any endorser or guarantor of the Note nor their respective heirs, personal representatives, successors or assigns shall be obligated to pay the amount of such interest to the extent it is in excess of the amount permitted by applicable law. It is expressly stipulated and agreed to be the intent of Seller, Borrower and Lender to at all times comply with the usury and other laws relating to the Note and the Security Instrument and any subsequent revisions, repeals or judicial interpretations hereof, to the extent applicable thereto. In the event Lender ever receives, collects or applies as interest any such excess, including but not limited to any "late charges" collected, such amount which would be excessive interest shall be applied to the reduction of the unpaid principal balance of the Note, and, if upon such application the principal balance of the Note is paid in full, any remaining excess shall be forthwith paid to Borrower and the provisions of the Note and the Security Instrument shall immediately be deemed reformed and the amounts thereafter collectible thereunder reduced, without the necessity of execution of any new document, so as to comply with the then applicable law, but so as to permit the recovery of the fullest amount otherwise called for thereunder. In determining whether or not the interest paid or payable under any specific contingency exceeds the maximum interest allowed to be charged by applicable law, Borrower and Lender shall, to the maximum extent permitted under applicable law, amortize, prorate, allocate and spread the total amount of interest throughout the entire term of the Note so that the amount or rate of interest charged for any and all periods of time during the term of the Note is to the greatest extent possible less than the maximum amount or rate of interest allowed to be charged by law during the relevant period of time

Loan No ▮▮▮▮▮

15. **Loan Documentation:** As amended hereby, the provisions of the Note and Security Instrument shall continue in full force and effect, and the Seller and Borrower acknowledge and reaffirm Seller's and Borrower's liability to Lender thereunder. In the event of any inconsistency between this Agreement and the terms of the Note and Security Instrument, this Agreement shall govern. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof as amended by this Agreement. Any default by Borrower in performance of its obligations herein contained shall constitute a default under the Note and Security Instrument, and shall allow Lender to exercise all of its remedies set forth in said Security Instrument

16. **Hazardous Substances:** As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 16 "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law

17. **Partial Invalidity:** In the event any portion of the sums intended to be secured by this Agreement cannot be lawfully secured, payments in reduction of such sums shall be applied first to those portions not secured

18. **Miscellaneous:** Borrower hereby agrees to pay all costs and expenses incurred by Lender in connection with the execution and administration of this Agreement, the assumption, renewal and extension and modification of the Note and Security Instrument and any other documents executed in connection herewith. Lender does not, by its execution of this Agreement, waive any right it may have against any person not a party hereto

This Agreement may be executed in multiple counterparts, each of which shall constitute an original instrument, but all of which shall constitute one and the same Agreement

19. **No Oral Agreements:** The written Loan Agreements represent the final agreements between parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties.

There are no unwritten oral agreements between the parties.

Loan No ███

EXECUTED as of the day and year first above written

Seller:

_____
LOUISE GWINN SIVY, Michael Sivy signing
as Executor of the Estate

Borrower:

_____
LOUISE GWINN SIVY Michael Sivy signing
as Executor of the Estate

_____
MICHAEL B SIVY

_____  3/23/12
LARISSA R SIVY

SELLER'S ADDRESS
43884 RIVER PT DR
LEESBURG, Virginia 20176

BORROWER'S ADDRESS
43884 RIVERPOINT DR
LEESBURG, Virginia 20176

VIRGINIA LOAN ASSUMPTION AGREEMENT
ARM-No Release

Page 6 of 8

Loan No: [redacted]

## SELLER ACKNOWLEDGMENT

State of   Virginia   §
                     §
County of  Loudoun   §

The foregoing instrument was acknowledged before me on   3/23/12   [date],
by LOUISE GWINN SIVY

*[name of person acknowledged]*

(Seal)      Maryam Afsnar
NOTARY PUBLIC
Commonwealth of Virginia
Reg. #7353569
My Commission Expires
January 31, 2014

Notary Public, State of   VA

My Commission Expires   Jan 31, 2014


## BORROWER ACKNOWLEDGMENT

State of   Virginia   §
                     §
County of  Loudoun   §

The foregoing instrument was acknowledged before me   3/23/2012  ,   [date],
by LOUISE GWINN SIVY and MICHAEL B SIVY and LARISSA R SIVY

~~[name of person acknowledged].~~

(Seal)      Maryam Afsnar
NOTARY PUBLIC
Commonwealth of Virginia
Reg. #7353569
My Commission Expires
January 31, 2014

Notary Public, State of   VA

My Commission Expires   Jan 31, 2014

ACKNOWLEDGMENT (VIRGINIA)                                          Page 7 of 8





Loan No. ███

_____6-21-12_____        _____6-21-12_____
-Date        -Date

Aurora Bank FSB        Mortgage Electronic Registration Systems, Inc
-Lender        -Mortgagee

By _[signature]_        By _[signature]_
Cassandra Leet        Lucy Lang

Its: Vice President        Its: Assistant Secretary

## LENDER/MORTGAGEE ACKNOWLEDGMENT

State of    Nebraska    §
                        §
County of    Scotts Bluff    §

The foregoing instrument was acknowledged before me this ____6-21____, _12_ _[date]_, by Cassandra Leet , Vice President , _[name of officer or agent, title of officer or agent]_ of Aurora Bank FSB

, on behalf of said entity, and by _Lucy Lang_ , ~~Assistant Secretary of Mortgage Electronic Registration~~ Systems, Inc., Mortgagee

(Seal)    [Notary stamp: GENERAL NOTARY - State of Nebraska, NANCY L LINDELL, My Comm Exp Sept 25, 2014]

_[signature]_ Nancy L Lindell
Notary Public, State of _Nebraska_

My Commission Expires.

ACKNOWLEDGMENT (VIRGINIA)          Page 8 of 8

TAX MAP NO.: 112 40 0478 000

After Recording Return To:
RUTH RUHL, P C
Attn. Recording Department
2801 Woodside Street
Dallas, Texas 75204

Prepared By:
RUTH RUHL, P C and
Co-Counsel, M Richard Epps, P.C

The maker of this instrument hereby certifies that the recording tax on hereon is derived in accordance with Section 58.1-803(D) or 58.1-809 of the Code of Virginia (1950) as amended.

_____[Space Above This Line For Recording Data]_____

Loan No
MERS No.

MERS Phone 1-888-679-6377

# LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), effective this 1st  day of  January, 2012  , between LOUISE GWINN SIVY, an unmarried woman and MICHAEL B SIVY and LARISSA R SIVY

("Borrower/Grantor")
and  Aurora Bank FSB

("Lender/Grantee"),
and Mortgage Electronic Registration Systems, Inc   ("Mortgagee"),
amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") and Timely Payment Rewards Rider, if any, dated  February 28th, 2006  , granted or assigned to Mortgage Electronic Registration Systems, Inc as mortgagee of record (solely as nominee for Lender and Lender's successors and assigns), P O Box 2026, Flint, Michigan 48501-2026 and recorded on March 2nd, 2006  , in Book/Liber N/A  , Page N/A  , Instrument No 20060302-19577  , Official Records of Loudoun  County, Virginia  , and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in said Security Instrument and defined therein as the "Property," located at 43884 RIVER PT DR, LEESBURG, Virginia 20176

"The original loan amount was $ 646,700.00 and the Unpaid Principal Balance is $ 725,569.79. The portion of the Unpaid Principal Balance which is subject to mortgage registry tax is $ 78,869.79."

Abbreviated Legal Description   LOT 12, SECTION 29, LANSDOWNE ON THE POTOMAC

**VIRGINIA LOAN MODIFICATION AGREEMENT**                                                                          Page 1 of 6

Loan No: ▮▮▮▮▮▮▮

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument)

1. As of January 1st, 2012, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U S $725,569 79, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized

2. $217,670 94 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $507,898 85 Interest at the rate of 3.000% will begin to accrue on the Interest Bearing Principal Balance as of January 1st, 2012 and the first new monthly payment on the Interest Bearing Principal Balance will be due on February 1st, 2012 The new Maturity Date will be May 1st, 2036. My payment schedule for the modified Loan is as follows

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|
| 1-5 | 3.000% | 01/01/2012 | $1,818 20 | 02/01/2012 | 60 |
| 6-25 | 4 000% | 01/01/2017 | $2,091 86 | 02/01/2017 | 231 |
| N/A | N/A | N/A | $291,860 04 | 05/01/2036 | 1 |
| N/A | N/A | N/A | $N/A | N/A | N/A |
| N/A | N/A | N/A | $N/A | N/A | N/A |
| N/A | N/A | N/A | $N/A | N/A | N/A |

3. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and the Security Instrument by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4. If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

**VIRGINIA LOAN MODIFICATION AGREEMENT**                                                      Page 2 of 6

Loan No : ▮

5.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower

6   Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument, however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No 1 above

   (a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A 1 of the Timely Payment Rewards Rider  By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled, and

   (b)  all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above

7   Borrower understands and agrees that

   (a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder

   (b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law  Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender

   (c)  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

   (d)  All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

Loan No ▮

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower

| Date | Borrower |
|---|---|
| 10 FEBRUARY 2012 | LOUISE GWINN SIVY (Michael Sivy signing as Executor of the Estate) _(Seal) –Borrower |
| 10 FEBRUARY 2012 | MICHAEL B SIVY _(Seal) –Borrower |
| February 10th, 2012 | LARISSA R SIVY _(Seal) –Borrower |
| Date | _(Seal) –Borrower |

## BORROWER ACKNOWLEDGMENT

State of    Virginia        §
                            §
County of  Loudoun          §

The foregoing instrument was acknowledged before me    02/10/2012,    [date],
by LOUISE GWINN SIVY and MICHAEL B SIVY and LARISSA R SIVY

*[name of person acknowledged]*

Printed/Typed Name  Pam Makkar

Notary Public, State of  VA

My Commission Expires.  Aug 31, 2013

PAM MAKKAR
NOTARY ID # 358811
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES AUG 31, 2013

VIRGINIA LOAN MODIFICATION AGREEMENT                                                Page 4 of 6

Loan No. [REDACTED]

6-21-12
-Date

Aurora Bank FSB
-Lender

By: *[signature]*

Printed/Typed Name  Cassandra Leet

Its: Vice President

## LENDER ACKNOWLEDGMENT

State of    Nebraska              §
                                  §
County of  Scotts Bluff           §

The foregoing instrument was acknowledged before me this ___6-21-12___ [date], by Cassandra Leet, Vice President, [name of officer or agent, title of officer or agent] of Aurora Bank FSB

, on behalf of said entity.

(Seal)

GENERAL NOTARY - State of Nebraska
NANCY L LINDELL
My Comm Exp Sept 25, 2014

Printed/Typed Name. Nancy L Lindell

Notary Public, State of  Nebraska

My Commission Expires: 09/25/2014

ACKNOWLEDGMENT (VIRGINIA)                                                    Page 5 of 6

Loan No ▮

__6-H-12_____
-Date

Mortgage Electronic Registration Systems, Inc
-Mortgagee

By _____*Lucy Lang*_____

Printed/Typed Name Lucy Lang

Its Assistant Secretary

## MORTGAGEE ACKNOWLEDGMENT

State of    Nebraska        §
                           §
County of   Scotts Bluff   §

The foregoing instrument was acknowledged before me this __6-21__, __12__ [date], by Lucy Lang _____, Assistant Secretary of Mortgage Electronic Registration Systems, Inc, Mortgagee, on behalf of said entity

(Seal)

> A GENERAL NOTARY - State of Nebraska
> NANCY L. LINDELL
> My Comm. Exp Sept 25, 2014

_Nancy L Lindell_____
Printed/Typed Name: Nancy L Lindell
Notary Public, State of _Nebraska_
My Commission Expires 09/25/2014

ACKNOWLEDGMENT (VIRGINIA)                          Page 6 of 6

Loan No: ▓▓▓▓▓                                                    MERS No: ▓▓▓▓▓

# BALLOON ADDENDUM

THIS ADDENDUM is made this 1st day of January, 2012, and is incorporated into and shall be deemed to amend and supplement the Loan Modification Agreement of the same date, given by the undersigned (the "Borrower") which modifies Borrower's Note and Security Instrument to Aurora Bank FSB (the "Lender") and covers the Property located at:

43884 RIVER PT DR, LEESBURG, Virginia 20176
*[Property Address]*

In addition to the agreements made in the Loan Modification Agreement, Borrower and Lender further agree as follows:

"THIS LOAN MUST EITHER BE PAID IN FULL AT MATURITY OR CONVERTED TO A MARKET LEVEL FIXED RATE OVER THE EXTENDED REMAINING TERM. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE IF YOU DO NOT QUALIFY. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER."

By signing below, Borrower and Lender accept and agree to the terms and covenants contained herein.

2/10/2012    /s/ Michael Sivy    (Seal)
Date         LOUISE GWINN SIVY, Michael Sivy    –Borrower
             signing as Executor of the Estate

2/10/2012    /s/ Michael Sivy    (Seal)
Date         MICHAEL B SIVY    –Borrower

02/10/2012   /s/ Larissa Sivy    (Seal)
Date         LARISSA R SIVY    –Borrower

_____    _____    (Seal)
Date                              –Borrower

BALLOON ADDENDUM                              Page 1 of 2

Loan No ▓▓▓▓▓▓▓

6-21-12 -Date

6-21-12 -Date

Aurora Bank FSB
-Lender

Mortgage Electronic Registration Systems, Inc
-Mortgagee

By _Cassandra Leet_

Printed/Typed Name Cassandra Leet

Its Vice President

By _Lucy Lang_

Printed/Typed Name Lucy Lang

Its: Assistant Secretary

BALLOON ADDENDUM                                                                 Page 2 of 2

### EXHIBIT 'A'

Lot 12, Section 29, LANSDOWNE ON THE POTOMAC, as the same appears duly dedicated, platted and recorded as Instrument Number 20041221-0136374, Plat as Instrument Number 20041221-0136375, among the land records of Loudoun County, Virginia.

AND BEING the same property as conveyed to Lansdowne Community Development LLC, a Virginia Limited Liability Company, by virtue of Deed from Lansdowne Residential, LLC, a Virginia Limited Liability Company a/k/a Lansdowne Residential, LLC, a Virginia Limited Liability Company, dated December 1, 1999, recorded December 3, 1999, in Deed Book 1734, Page 1731, and recorded in the Clerk's Office of the Circuit Court of Loudoun County, Virginia.